Good morning, Your Honors. Opposing counsel. Your Honor, my name is Randolpho Lopez, and I'm representing William Marshall. Brief facts on the case, Your Honor, are these. Mr. Marshall pled guilty in the state court in the state of Arizona, Superior Court. During the time that he pled guilty, he did it via plea agreements that he signed. He acknowledged in the plea colloquy with the court that he understood the plea and that he would abide by it, including the possibility that the sentences would run consecutively. He had two cases, and he ended up getting seven and a half years on one and seven years on the other. In Arizona, when you plead guilty, your only avenue is by what's called a PCR, or post-conviction relief. In this particular case, at the time of sentencing, when Mr. Marshall was sentenced, he refused to sign the PCR notice. In state court, each one is given a notice to sign that they have those particular rights. He refused to do so. At that time, trial counsel was a public defender. The public defender in Tucson, Arizona, have their own appellate offices. However, in this particular case, appellate or trial counsel withdrew, and appellate counsel or PCR counsel was appointed, and Mr. Cheadle was appointed to represent on a PCR petition to be filed with the court. The PCR attorney, Mr. Cheadle, did file a post-conviction relief petition with the court. However, there is nothing in the record, Your Honors, that indicates that at that time, he consulted with Mr. Marshall regarding any issues that he wanted to bring up to compound the problem when he filed it. He then, after the trial court denied that particular PCR petition, he then appealed it. But the main problem that this particular case has, Your Honors, is that the PCR petition, when he filed it, he requested that the court simply search for fundamental error or an Anders type of a review of that particular case. Now, in Arizona, it's a strange animal. Did he raise any errors on his own? Mr. Marshall, Your Honor? Yes. No, Your Honor. No, he did not. At least his attorney. His attorney. The only error that he did raise was that it was a cruel and unusual punishment for him to be given the seven-and-a-half-year sentence and a seven-year sentence to run consecutively. And he supported that contention with argument? In other words, he filed a brief arguing that that was unconstitutional? No. No, what he filed, Your Honor, what he or what he Mr. Marshall had requested was that he wanted to file an ineffective assistance claim. The problem that became, Judge, is that when he wanted that particular issue raised, it became. When you say that issue, which issue are you referring to now? The ineffective assistance claim. All right. That is the issue that he wanted to raise, because he – Was it that the trial counsel was ineffective? That's correct, Your Honor, that the trial counsel did not object because the seven-and-a-half years that he received, it was under what's called an Arizona dangerous nature allegation, which actually makes it a day-for-day. Had that hurt him before the court of appeals, or didn't they address that? They did not address it, Your Honor, because once the trial counsel or the appellate, filed the Anders-like brief with the court of appeals, it's analogous to a direct appeal, and whatever is contained in that record is the only thing that can be raised. Hence, since he did not raise the initial issue of his ineffective assistance by the trial counsel in the PCR, it was not determined to be heard. Moreover, the actual filing of an Anders brief in a PCR setting is not allowed in Arizona, or it – fundamental error was the statute was repealed. It used to be that the court of appeals would review a file for fundamental error. When you say not allowed, what, by rule or by case law or what? By rule, Your Honor, by statute. It was a statute that was repealed when the post-conviction relief remedies were instituted by the courts. There was a direct appeal that can be done. It was not done in this particular case. However, because there is the issue of the ineffectiveness that was not initial in the initial PCR, hence, because Mr. Marshall was not consulted that that's what he wanted, it became an issue that was not raised, hence, it was not allowed in any further PCR proceedings. All right. Let's back up a little bit. Yes, sir. The – first of all, it's my understanding that Marshall actually waived appeal of the sentencing issues. Is that right? Yes? Yes, Your Honor. Okay. If he waived the appeal of the sentencing issues, wouldn't that carry over to the post-conviction relief type of appeal? Generally, it would, unless he would bring forward an ineffective assistance claim in the first PCR. Then they would have an evidentiary hearing before the trial court to determine whether or not there was indeed any ineffectiveness done. Now, while the plea agreement – No, no, Judge. The ineffectiveness is never waived, Your Honor. The issue is – No. It's that. I know that. If we're talking about the ineffective assistance of counsel at the trial level, Yes, sir. All right. Now, Mr. Marshall waived any appeal, right? Yes, Your Honor. Okay. Now, my understanding of what you're saying is that because that trial counsel was ineffective, that he should not have waived the appeal? No, Your Honor. The remedy that he has is by post-conviction relief. That's what the PSR is. I know that. But if that's equivalent to an appeal, then why would the waiver of that appeal foreclose him from bringing it further? Well, the waiver of the appeal goes to the actual having the trial any infirmities regarding in that particular area, not of what Mr. Marshall determined that he had had ineffective counsel when he had been sentenced what he considered to be a dangerous nature sentence when the actual plea agreement did not speak of any dangerous nature allegation in the plea agreement itself. That's the issue that he had with trial counsel. Hence, that's what he wanted to raise in the PCR, which the PCR counsel never discussed with him to include it in the first petition so it could be ferreted out. That's the issue. That's how we came to be here is because once that started rolling, then once the PCR was denied, the PCR counsel then filed the notice of appeal with the court of appeals, basically enunciating or reiterating the same issues without more to the court of appeals, which then under Arizona case law. I don't think, Mr. Lopez, I don't think you're answering Judge Huck's question if I follow the answer. In other words, as I understand the question, it's this. Mr. Marshall, in the plea agreement, waived his right to appeal, right? Yes, sir. All right. Now, you're saying that because he pleaded guilty, his first PCR petition is equivalent to an appeal, right? Yes, sir. So didn't he waive his right to file a first PCR petition by waiving his right to appeal because it's the same as an appeal? No, Your Honor. And the reason is, why not? Because the postconviction remedies that are under Arizona law given to a defendant are specifically tailored to address any other issues other than those issues that could have been raised on direct appeal. He can't raise any issue on direct appeal because he has no direct appeal. Because he waived it, yes, Your Honor. No, not because he waived it because there is no direct appeal from a plea of guilty in Arizona, right? That's correct. So how can he waive it if he doesn't have it? Well, because the postconviction relief remedies are the ones that are the area or the procedure by which Mr. Marshall can address any infirmity that he does have. So the first PCR petition is equivalent to an appeal, right? Isn't that what you're saying? In this setting, yes, Your Honor. So he has a right to counsel in the first PCR proceeding. Yes, Your Honor. So if it's equivalent to appeal, why didn't he waive that when he waived his right to appeal? That's the question, as I understand it. And you haven't addressed that question. Well, Your Honor, maybe I'm not making my – obviously, I'm not making myself clear. But the postconviction – Oh, you're arguing the merits of his position, not whether or not he waived his right to appeal. Well, Your Honor, that's exactly what I'm saying, is that the petition itself, the ineffectiveness that came – that occurred in this particular case was compounded when the attorney for the – in the postconviction relief arena failed to include the allegation that he had been – that he had not had effective assistance of counsel when he entered his plea, and particularly during the sentencing phase. That is what he was raising by the PCR petition, or wanted to raise in the PCR petition, which the PCR counsel failed to consult with him and raise it. And he had been trying since to get that back into it, and that's the area where he cannot receive any type of hearing. Okay. Why don't you proceed to your other points? Yes, Your Honor. Secondly is whether or not under the Strickland test, whether or not there would be any type of prejudice that resulted from this particular lack of not including the PCR petition, his ineffective assistance of counsel claim. And the issue becomes really – the prejudice becomes when he was not consulted of what would be included in the first PCR petition. Hence, once that is established, he has suffered that particular prejudice. Whether or not he's going to be successful or not, we don't know yet, because he has not had that particular hearing in the trial court regarding the ineffectiveness of counsel. But at this particular stage. Counsel for prejudice, to show prejudice, do you have to show that he had an argument that would have won? No, Your Honor. Not under the current case law. All it indicates is that had he been consulted with requiring what issues he wanted to bring up or had counsel simply had some sort of documentation indicating to him, I am not filing a PCR petition or I'm not pursuing this any further because I don't see any merit. You, Mr. Defendant, pro per on your own, can file whatever issues you want to bring up. None of that is in the record, Your Honor. Hence, all he needs to show is had he been consulted about what issues should have been raised, that's enough to indicate that he had been denied prejudice. Let's talk a little bit about prejudice unless he can say if I was consulted, I would have requested a particular issue be raised and I would have gotten relief on it. Why doesn't Strickland's second prong require that? Well, Your Honor, in Roe v. Ortega, Flores, and the subsequent cases, it indicates that all that a defendant in the arena of where Sixth Amendment constitutional infirmity is alleged is that appellate counsel did not consult with him regarding a certain issue of what they wanted to raise. Whether or not it would have particular merit is something that is to be addressed during an evidentiary hearing. That's the problem in this particular case. None was ever had in that. I understand what you are saying, Judge, is that we need to somehow in the general scheme of Strickland is that you need to show what prejudice resulted from not having that hearing. But what we do not know in this particular case, if Mr. Marshall had had the hearing regarding the ineffectiveness of the trial court counsel for not objecting at the sentencing phase regarding the dangerous nature allegation, that it would not have been the actual plea agreement that he had and the sentencing range would have been lowered the way it is now. It's a day-for-day type of sentence that he receives because of the dangerous nature allegation of it. Okay. Thank you. You're drawing a distinction, are you not, between an Anders brief and the attorney arguing on appeal without it being an Anders brief? Is that right? Because clearly you have to show prejudice if he was going ahead and proceeding and arguing a case before the court of appeals. But your – as I understood your argument from the brief, you contend that having filed an Anders brief, that is, one in which the attorney says, you know, I don't see any reasonable argument, and therefore I'm opening it up for the court of appeals to determine if they see something, but I don't see anything. Now, is that – that's what an Anders brief is, isn't it? Yes, Your Honor. With one – well, I'm sorry. Go ahead. That's all? Well, the problem in Arizona is that they don't have to check for fundamental error. That statute has been repealed. In fact, the court of appeals in this particular case said we declined to even search for fundamental error, and we're not even going to do it because under State v. Smith, we don't have to. We're not going to do it. And that's what happened. So he didn't even get that. Okay. Mr. Lopez, are you saying that the – the argument that should have been raised in the first PCR petition is that the trial counsel was ineffective because of the sentencing advice and not objecting to the sentence? No, Your Honor. In the first PCR is that the PCR counsel, Mr. Cheadle, did not consult with Mr. Marshall that he wanted to raise the ineffective assistance. Once it was not in the PCR, it – That's what I mean. And so presumably if he had consulted with Mr. Marshall and learned that, he would have raised – he would have raised the – that point, right? Ineffective assistance. Yes, Your Honor. And in Arizona, once you raise the ineffective assistance claim by trial counsel in a PCR petition, you are entitled to an evidentiary hearing before the trial court. Now, Mr. Cheadle, is he the one with the public defender? No, Your Honor. All right. The public defender is the one who represented Mr. Marshall in the trial court during the plea of guilty. Yes, Your Honor. And Cheadle was appointed for the first PCR petition? Is that right? No, Your Honor. Mr. Cheadle was appointed to start the PCR petition. All right. All right. Thank you. I'd like to reserve my time for rebuttal. Yes. All right. Good morning. May it please the Court. I believe I'll start off by clarifying Justice Schema's question about whether or not you can waive direct appeal and how that actually works in Arizona. The defendant does, by pleading guilty, waive a direct appeal, but he's not permitted to waive a Rule 32 appeal because the Arizona Constitution guarantees him that right as his appellate review. Now, Rule 32 is what? It's post-conviction relief. Right. It's considered collateral review. Right. And it's sort of a strange hybrid when a pleading guilty. It's like a habeas review. It's like a habeas review. So in other words, in Arizona, the right to file a first PCR petition is a non-waivable right. That's correct. In a pleading, a pleading defendant. All right. So that's the reason you didn't raise it. Right. Because it can't be waived. It cannot be waived. All right. Now, another thing you didn't raise, and I assume by not raising it, you agree that in a first PCR petition, in this kind of a case where the defendant pleads guilty, the defendant is entitled to counsel as a matter of right. That's correct. Under the Arizona Constitution, he is, yes. That's according to the Arizona Constitution. That's correct. All right. Thank you. The concern in this case, if I'm understanding the Court's COA, is whether or not Flores Ortega actually applies in this case, and whether this defendant was denied an appeal because his counsel filed what was considered an Anders brief. And Respondents say he was not denied an appeal. He got not only the direct appeal that he was entitled to, but also a discretionary appeal with the Arizona Court of Appeals. So in no way. Well, except that, you know, the Anders procedures, as I understand it, requires that, one, if the attorney determines in his or her opinion that the appeal is, you know, without merit and so files an Anders brief, then, two, the attorney has the obligation to inform his client and tell you the client, Mr. Marshall, I don't think this appeal is meritorious. I'm going to file an Anders brief. But you have the right then to file a brief on your own. He didn't tell him that. Well, as a matter of fact, he did copy Mr. Marshall on all of his pleadings. But he didn't tell him he had the right to file a brief on his own. Neither did the Court, did it? I'm sorry? He didn't tell him? He did not tell Mr. Marshall that then he had the right to file a brief on his own to raise any points he wanted to, and neither did the Court. No one told Mr. Marshall that. This was an inartful pleading. No question about that. But even under Rule 32.6 in Arizona, the Court is instructed to review the record that this is the trial court in the PCR proceeding, review the record, review the pleadings, and disregard any imperfection of form. So in a bit, this is what happened in Arizona. The Court accepted that pleading, didn't find that it was inadequate to represent Mr. Marshall's interests. It was basically the same pleading was filed as a petition for review to the Arizona Court of Appeals. That Court did not find it inadequate and address the sentencing claims. So it's hard to see how that actually kept Mr. Marshall from having review. He actually had more review.  The Court did have to review as a brief. Was this, in fact, an Anders brief? It yes. I would say it was an Anders brief. So we're to test it under the Anders brief line of cases. I'm sorry? We then are to consider this under the Anders brief line of cases. That would seem appropriate. He did basically say I... Then we don't have to, we do not, as a matter of fact, consider whether there was prejudice or not. We just consider whether the Anders brief was appropriately filed and those procedures are taken care of. That's correct. All right. Well, as Judge Shishima said, one of the obligations in filing an Anders brief is to notify your counsel that there is an opportunity to file a brief. Furthermore, as I read the Anders brief indication like Smith v. Robinson decided by the Supreme Court, the attorney in filing an Anders brief is supposed to identify those issues which are effective and the Court should consider, but then step away and have nothing further to do with the case. But that didn't happen here.  defender, he went ahead as though he were still sort of representing the defendant. That is correct. And Smith v. Robinson, as a matter of fact, the Court said, our procedures as we put out in Anders are a prophylactic measure. They're not a constitutional demand. So what we need to decide is whether or not he had his constitutional right to an adequate and effective appeal, and the State says that he does because he managed to have review of his cruel and unusual sentencing claims. And Mr. Marshall hasn't come forward with anything that he wanted to appeal. And the State disagrees. What about the point Mr. Lopez raised about the sentence, you know? Mr. Marshall refused. When he was given his advice on how and when to file Rule 32 procedure, which was his the State's SCR, I believe, page 10 and 11, written refused on the bottom. That's one indication that he was to do what? He refused to accept the Court's notice of his right to appeal a PCR, through a PCR. Yeah. He didn't refuse to file a Rule 32. No. He just didn't. He refused the advice of the Court to file a Rule 32. Well, he didn't do that. He just didn't sign. Well, yes, but that certainly, if one were interested in appealing, certainly he would have acknowledged that right to appeal. But that's not all we have in the record. When the defense counsel filed his Rule 32, he did copy Mr. Marshall. There is nothing in the record to show that Mr. Marshall found any defect with this pleading. And, in fact, he filed with the court of appeals or the clerk of the court two notices complaining that his appeal had not yet been decided. This is the same appeal that was filed by defense counsel Cheadle, thereby adopting that appeal on his own. He could just as easily have said, this appeal doesn't represent what I wanted to bring to the court. He did not complain about that. And then, furthermore, when he was given the opportunity to file a petition for review with the Arizona Supreme Court, he never did. He just let that opportunity pass. This doesn't support the idea that he was eager to bring his own pro se pleadings. Now, he did at a later time. But when talking about the first appeal of right and the discretionary appeal that he had, he never indicated that he was unhappy with counsel's pleadings or that counsel had in some way misrepresented what he wanted to argue. And it's important, too, to remember under ----  Now, does the failure to file something with the Arizona Supreme Court take care of the notice of to him that he could file a brief before the court of appeal? No, but it does indicate his lack of interest in pursuing a program. How does that help us? Lack of interest. Well, maybe not that much. I don't think so. No, okay. It's important to remember, too, and Flores-Ortega points out that when you have a pleading defendant, you have a completely different situation. You have a defendant whose conviction is not in question. He has given up enumerated constitutional rights in order to obtain what must be a beneficial plea in his case. It reduces the scope of the potential issues that he can bring on appeal. And in this case, the Court must consider whether he received the sentence that he bargained for, and he did. He agreed to the sentence. He voluntarily and intelligently agreed to his plea. Did he agree or did he acknowledge that that is the sentence that he could receive? That's true. And that was the... But he didn't agree to it. Well, he acknowledged that that was the sentence. Could be. Could be, yes. In fact, it could have been, instead of seven and a half years, it could have been 15 years. It could have been 15 years, yes. So he acknowledged that that judge could sentence him... That's correct, Your Honor. ...to those two separate crimes. Yes. And he also acknowledged that they could be imposed consecutively. Yes. And so he did have the benefit of his bargain in that plea. Whether or not the Anders – the thing that concerns me is that if he had – under Flores-Ortega, the defendant had no access to an appeal at all. The courtroom door was closed to him because his lawyer didn't file a notice of appeal at all. He did not consult with his client, and because of that, prejudice was presumed. He had – it's the same thing... So that's in the Flores-Ortega case, not our case. That's Flores-Ortega. That's not our case, no. All right. So the post-conviction relief petition, which is Rule 32, as I understand, was appropriately filed. Was it appropriately filed? Was filed. Yes. Yes. All right. So that was filed. Now, what puzzles me is we seem to be in a hybrid situation of whether it's an Anders brief or whether the attorney is proceeding to represent his defendant in that Rule 32 proceeding or not. Which is it? Well, the State believes that this counsel actively represented his client... Right. ...even though, as I said, inartfully, because by filing the Anders-type brief, and he didn't call it an Anders brief, but it certainly looks like one because he says the arguable issue is cruel and unusual punishment. Is that representing your client if you file an Anders brief? Well, I don't think that's representing my client if I file an Anders brief. Anders brief is saying, you know, I can't represent him because there's nothing to argue. Right? But he didn't step aside, Your Honor. He continued to represent him. Well, shouldn't he have stepped aside? What do you mean he continued and did nothing? He continued to do nothing. Well, actually... He didn't file the merits brief. You know, he said one line about cruel and unusual, but he didn't argue it. Well, it was a case that was overruled four years earlier. Granted, it was unartful, it didn't do the job. I'm sorry. More than unartful, it was incompetent. It may very well have been, but there was no prejudice. Won't you say if the only argument you make is, you know, is a one line argument and the only case you cite is a case that was overruled four years earlier, it's incompetent? It's very well could be said to be incompetent. However, there was no prejudice to Mr. Marshall. Well, but you apply the prejudice test if you have an attorney representing the Petitioner and he's not representing him. He's not filing, you know, he's not filing a marriage brief and he's not stepping aside. Still in all, his unartful pleading did get review from the Arizona Court of Appeals, a discretionary review. And even though the Court at that time, the requirement to look for fundamental error was repealed in July of 1995. But even though the Court of Appeals was no longer required to look for fundamental error, they were certainly entitled to. They still had the ability to. And when we are talking about a judicial proceeding, the Court presumes that that proceeding was reliable. And there's nothing to indicate that it wasn't reliable. What did the attorney in filing his Rule 32 petition, didn't he go through all the things that were not effective? Didn't he say this argument has no merit, that argument has no merit, another argument has no merit? Did he do that? He did that. So that's the Anders approach, but it's misapplied because the attorney is not supposed to say all these things have no merit. He's just supposed to say I don't see any merit. The best argument that could be made are X and Y. And then I step aside and the Court of Appeals is, according to Smith v. Robbins, the Court of Appeals is not supposed to search to see if they see anything in it. And if they do, they grant it. If they don't, they don't. But here he not only made a very cursory reference to what could be an argument, but then dispelled all the other possible ones, saying this has no merit, that has no merit. That certainly doesn't comply with what's required of Anders. It complies to the extent that he clearly reviewed the record and examined the issues. He didn't just file a no merit, a one-paragraph no merit response to the Court. Well, but that's what Anders is supposed to be. If you don't see any merit, myself, as an attorney, I don't see anything. But I'm going to step out of the way and say I think, under Anders itself, is supposed to point out those things that could conceivably be a good argument. Now, Smith v. Robbins, the Court said that California didn't really have to do that. And, of course, all of the Court of Appeals judges in California filed briefs to say, look, that's not complying with Anders because we don't have to search through all the record. Well, now they do. And so if that was the case, if he stepped aside and said, all right, Court of Appeals, you can, if you see anything in there, fine. But you shouldn't have said, I see no merit in this, I see no merit in that, and so on. And then sort of a hybrid thing, just referring to something that no argument was really made, that would be equivalent to saying, under Anders, but these are the best arguments I see. So I think we have to really examine this as though this was an Anders brief and prejudice is not required for that. Prejudice is not required? No, not the ---- A showing of prejudice? Well, of course, the State would disagree with that, Your Honor, because in order to have a presumption of prejudice, you have to have an actual denial of any review at all, and this defendant had a review, no thanks, as you may say, to his attorney, because it was an Anders-style brief, and that's how the Arizona Court of Appeals described it, as an Anders-style brief. But they went on to look at his sentence, saw that it was within the statutory range, that he had received the benefit that he had bargained for, and that there was no prejudice whatsoever to this defendant. So the State would disagree with that. You have prejudice presumed under three circumstances. If you have your denied counsel, if there's a conflict in counsel, and there's one more that doesn't apply, but in this case, he was not denied counsel. It may have been not the best counsel, and he may have been deficient, but Mr. Marshall was not prejudiced by this Anders-style brief because he did get a discretionary review by the Arizona Court of Appeals. But he was never advised that he could file a brief. Well, we don't know that. There's no evidence in the record that he was advised. He was, or that he wasn't. And we can't go back now and ask Mr. Cheadle. Mr. Cheadle passed away in 2001, so we are stuck with the record that we have. Didn't Marshall say he wasn't advised? He did say. Well, that's the only evidence we have. That's true. That's true. It would have been nice to have had the attorney's input on that. But as I said, Mr. Cheadle is no longer with us, so. So if we have a situation in which the defendant, Marshall, was never advised that he could file a brief, and we have an Anders kind of situation, which is what you say we have, isn't that a serious deficiency that with the representation? It may be a serious deficiency, Your Honor, but there was no prejudice. Okay. Thank you. Your Honor. Was there any prejudice? I believe so, Your Honor. What? That he was denied, as Mr. Marshall indicates, ineffective assistance of counsel, not only at the appellate stage, the PCR stage, but in the trial level. No, but on the merits. What is it that he would have shown if he had been able to file a brief? What he would have been able to show, Your Honor, is that in the plea agreement itself, it indicates a certain type of sentence that he would be receiving. He did acknowledge that in the plea colloquy. We don't deny that, Your Honor. The issue becomes when he was sentenced, the judge found it to be a dangerous nature allegation. In Arizona, in a dangerous nature allegation, instead of an 85 percent time that you're facing, it's a day-for-day type of sentence. Then that takes it out of the category of when he would have been released. He still is in custody to this day. Why couldn't he have been sentenced to the seven and a half years for the convenience store attempted robbery and seven years for the beating up the bailiff or beating up the bail boss? Why couldn't he have? Yes. Well, he was sentenced to that. Well, and so how was he prejudiced if that was an appropriate sentence? Why wasn't that an appropriate sentence? It wasn't. Again, Your Honor, it wasn't an appropriate sentence because the plea agreement itself, if the court will note, it was cited in the by supplement page number one by the State. There is nothing there that talks about that it is a dangerous nature allegation. In Arizona, when you have a type of crime that one is pleading to, a specific count, it generally says, I practiced there, it says count three dangerous nature allegation, robbery, whatever. But it indicates that amount, which then brings in, Your Honor, the actual dangerous nature allegation that is a subsequent pleading. In this particular case, it said all other allegations are being dismissed in this particular case. Well, couldn't he have been sentenced to the 15 years, whether it was a dangerous allegation in there or not? Yes, Your Honor. He could have, yes. So what difference does that make then? If the judge could have sentenced him to 15 years, instead he sentenced him to seven and a half, what's the problem? Well, first of all, the problem would be because of the dangerous nature allegation makes it a non-85% or good crime credits that one gets. It's a day for day type of sentence. So seven and a half years means in Arizona, dangerous nature, seven and a half years. If it was simply seven and a half years non-dangerous, it's 85% time. Whether it be seven and a half years or 15 years, it will be less time unless they take away his good time credits. And that's what the carrot is for the individuals, the inmates, for them to look forward to being released. That is the prejudice that he suffered. That's what he understood from the initial pleadings that he had in the plea agreement. That's why he refused or the failure to sign the PCR. He simply refused to sign it. And then compound, the problem is compounded when appellate PCR counsel does not consult with him about what is. I think we have your point on that. Your time has expired. Thank you very much, counsel, both counsel. We're going to take a brief recess and we'll be back in a few minutes. Thank you.
judges: Hug, Tashima, Gould